**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| LOUISIANA HEALTH SERVICE<br>& INDEMNITY COMPANY, d/b/a<br>BLUE CROSS AND BLUE SHIELD<br>OF LOUISIANA | CIVIL ACTION |
| VERSUS | 18-278-SDD-EWD |
| ILLINOIS UNION INSURANCE<br>COMPANY | |

### RULING

This matter is before the Court on the *Motion for Judgment on the Pleadings*[1] filed by Defendant, Illinois Union Insurance Company ("Illinois Union"). Plaintiff, Louisiana Health Service & Indemnity Company, d/b/a Blue Cross and Blue Shield of Louisiana ("BCBSLA"), filed an *Opposition*,[2] to which Illinois Union filed a *Reply*.[3] For the reasons stated below, the Court finds that the *Motion* shall be granted.

### I. FACTUAL AND PROCEDURAL BACKGROUND

The question presented by this *Motion* is how closely related two insurance claims must be to be considered "Related Claims" under a provision in the contract between the parties. The two claims at issue came about as follows. In 2010, Metairie, Louisiana-based Omega Hospital sued BCBSLA, a health insurance company, for damages caused by BCBSLA's alleged "systematic, sophisticated, and intentional conduct to avoid paying Omega Hospital what it should receive as payment for services rendered."[4] BCBSLA

---

[1] Rec. Doc. No. 39.
[2] Rec. Doc. No. 43.
[3] Rec. Doc. No. 46.
[4] Rec Doc. No. 27-7, p. 7.
62031

settled that suit ("the Omega Lawsuit") and its insurer, Illinois Union, provided coverage for the settlement under the insurance policy then in effect between the parties ("the 2007-2009 Policy").[5] Then, in 2016, Metairie, Louisiana-based Crescent City Surgical Centre ("CCSC") sued BCBSLA for damages arising out of what it also called a "systematic, sophisticated, and intentional conduct to avoid paying Crescent Hospital what it should receive as payment for services rendered."[6] BCBSLA settled that suit too ("the CCSC Lawsuit"), and filed the instant action seeking coverage for the settlement under the Illinois Union policy then in effect ("the 2016-17 Policy").

Both the 2007-2009 and 2016-17 Policies provide that "[a]ll Related Claims, whenever made, shall be deemed to be a single Claim and shall be deemed to have been first made [on the] date on which the earliest Claim within such Related Claims was received. . ."[7] "Related Claims" are defined in both policies as "all Claims for all Wrongful Acts that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of related facts, circumstances, situations, events, transactions or causes."[8] Thus, if the Omega Lawsuit and the CCSC Lawsuit are Related Claims, because the first claim (for coverage of the Omega settlement) was made under the 2007-2009 Policy, only the 2007-2009 Policy (whose policy limits have already been reached) applies and BCBSLA cannot seek further coverage under the 2016-17 Policy for its settlement of the CCSC Lawsuit. Of course, the parties could not disagree more about

---

[5] BCBSLA has purchased a number of insurance policies from Illinois Union. The policies at issue here are a Managed Care Organization Errors and Omissions Liability Policy covering May 25, 2007 to January 1, 2009 ("the 2007-2009 Policy") and another policy of the same name, covering April 1, 2016 to April 1, 2017 ("the 2016-2017 Policy").
[6] Rec. Doc. No. 27-8, p. 9.
[7] *Id*, p. 16 (2007-2009 Policy); See Rec. Doc. No. 4-1 for 2016-17 Policy.
[8] Rec. Doc. No. 27-2, p. 11; See Rec. Doc. No. 4-1 for 2016-17 Policy.
62031

the relatedness of the two claims. BCBSLA argues that, despite the obvious linguistic similarity in the filings, the suits "are not related."[9] Illinois Union counters that if "these lawsuits do not share a 'common nexus,' then no two claims do."[10]

## II.  LAW AND ANALYSIS

### A. Motion to Dismiss under Rule 12(c)

"The standard for dismissal under Rule 12(c) is the same as that under Rule 12(b)(6)."[11] When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[12] The Court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[13] "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[14] In *Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[15] A complaint is also insufficient if it

---

[9] Rec. Doc. No. 43, p. 4.
[10] Rec. Doc. No. 39-1, p. 18.
[11] *Garza v. Escobar,* 972 F.3d 721, 727 (5th Cir. 2020)(quoting *Hale v. Metrex Research Corp.*, 963 F.3d 424, 427 (5th Cir. 2020)).
[12] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007)(quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir. 2004)).
[13] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).
[14] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d at 467).
[15] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(internal citations and brackets omitted)(hereinafter *Twombly*).

62031

merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[16]  However, "[a] claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[17]  In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully."[18]  "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[19]  On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[20]

### B. Analysis

To an extent, the Court credits BCBSLA's argument that some level of similarity is inevitable among its claims: "BCBSLA is a health insurance company, and if a provider of medical services is going to file a claim against BCBSLA, the claim will often be based on the allegation that BCBSLA sought to avoid paying the amount such provider believes it was entitled to for the medical services it provided."[21] With that in mind, BCBSLA argues that the Omega Lawsuit and the CCSC Lawsuit are not Related Claims simply because of "[b]oilerplate pleadings filed by the same plaintiff's counsel."[22]

Illinois Union counters that the similarity between the claims is more than skin deep. It cites specific factual similarities between the lawsuits that, in its view, make them

---

[16] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)(internal citations omitted)(hereinafter "*Iqbal*").
[17] *Twombly*, 550 U.S. at 570.
[18] *Iqbal*, 556 U.S. at 678.
[19] *Taha v. William Marsh Rice University*, 2012 WL 1576099 at *2 (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).
[20] *Twombly*, 550 U.S. at 556 (quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).
[21] Rec. Doc. No. 43, p. 9.
[22] *Id.*

62031

"Related Claims" under the policy. First, both complaints allege that BCBSLA engaged in a "practice aimed at reducing [reimbursements/payments] to out-of-network providers"[23] – with the Omega Complaint using the term "reimbursements" and the CCSC Complaint using "payments." Next, Illinois Union argues, the claims are related because both suits allege that BCBSLA carried out that practice of reducing payments by "threaten[ing] doctors who practice at out-of-network facilities that they [sic] physicians will not be reimbursed by BSBS unless they affiliate themselves with an in-network hospital"[24] and by misleading providers via information on its iLinkBlue web portal[25] about the extent of coverage available.

Although both parties marshal case law in support of their argument, the cases cited by Illinois Union are significantly more on point and persuasive. In particular, Illinois Union cites a 2018 Eleventh Circuit case, *Health First, Inc. v. Capitol Specialty Ins. Corp.*, where the court applied a "Related Claims" provision in an insurance contract, and concluded that the district court was correct where it found that a series of "complaints [that] describe a continuing pattern of anticompetitive behavior on the part of Health First"[26] were "Related Claims" under the policy. "Related Claims" in the contract at issue in *Health First* were defined as follows:

> all Claims for Wrongful Acts based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the same or related facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances, situations, transactions or events, whether related logically, causally or in any other way.[27]

---

[23] Rec. Doc. No. 27-1, p. 5 ¶ 30; Rec. Doc. No. 27-3, p. 4.
[24] Rec. Doc. No. 27-1, p. 5 at ¶ 31; Rec. Doc. No. 27-3, p. 5.
[25] Rec. Doc. No. 27-1 ¶ 22; Rec. Doc. No. 27-3, p. 4.
[26] *Health First, Inc. v. Capitol Specialty Ins. Corp.,* 747 F. App'x 744, 751 (11th Cir. 2018).
[27] *Id.* at 746.

Compare with the "Related Claims" provision in the contract between BCBSLA and Illinois Union:

> all Claims for Wrongful Acts that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of related facts, circumstances, situations, events, transactions or causes.

Both definitions are extremely broad; the Eleventh Circuit noted as much.[28] Ultimately, the *Health First* court found that the similarities in the underlying claims more than cleared the low hurdle for relatedness. "To name just one similarity," the court wrote, "all the complaints allege that Health First used its monopolistic power to coerce doctors to admit patients exclusively to Health First facilities."[29] The same reasoning applies here, where both lawsuits allege that BCBSLA "threatened" out-of-network doctors that reimbursement was only available if they affiliated themselves with an in-network facility. BSBSLA does not address or attempt to distinguish *Health First* in its Opposition.

Illinois Union also cites *Papalia v. Arch Ins. Co.*[30] and *Valley Imaging*,[31] two district court cases where courts applied Related Claims provisions and found relatedness. In *Papalia*, the District Court for the District of New Jersey analyzed whether multiple lawsuits by clients of a financial planner who undertook a scheme "to sell unsuitable life insurance policies to the claimants so that [he] could collect large commissions" were "Related Claims" under the financial planner's insurance policy. The court concluded that the suits were related claims, finding that although the facts underlying each suit were not

---

[28] *Id.* at 751 ("These policies have extremely broad related-claims provisions").
[29] *Id.*
[30] No. 2:15-CV-02856, 2017 WL 3288113, at *1 (D.N.J. Aug. 1, 2017).
[31] *Valley Imaging P'ship Med. Grp., L.P. v. RLI Ins. Co.,* No. CV064595ABCPLAX, 2007 WL 9734496 (C.D. Cal. Sept. 14, 2007).

62031

identical, the suits had "commonalities [which] demonstrate that each client was part of an overall plan and that [the financial planner] had a common goal."[32] Therefore, the *Papalia* court found that there was a "common nexus" sufficient to establish the suits as "Related Claims." BCBSLA argues that *Papalia* is distinguishable because it was decided on summary judgment, after discovery had closed. But the District of New Jersey clearly came to its conclusion by analyzing the *allegations* against the financial planner and the terms of the contract. A close reading of the case reveals that the decision turned on allegations of the complaint and not on summary judgment evidence.

Likewise, BCBSLA attempts to discount *Valley Imaging,* where the Central District of California concluded that multiple sexual harassment suits against the same employer were related claims, again arguing that it was decided "on summary judgment based on evidence outside the pleadings, including witness declarations."[33] It is true that the Central District of California cites to declarations at various places in its ruling, but when analyzing the relatedness of the claims, the court clearly focuses on allegations from the complaint ("The plaintiffs . . . all alleged a pattern of sexual harassment";[34] "These plaintiffs brought similar sexual harassment, retaliation, California Fair Employment and Housing Act, and Labor Code claims against identical defendants").[35] In fact, the court rejected the notion that the relatedness inquiry turned on discovery evidence, stating, "Plaintiffs fail to point to any part of the policy, however, that requires 'facts' as opposed to allegations, in order

---

[32] *Id.* at 14.
[33] Rec. Doc. No. 43, p. 11.
[34] *Valley Imaging P'ship Med. Grp., L.P. v. RLI Ins. Co.,* No. CV064595ABCPLAX, 2007 WL 9734496 at *6 (C.D. Cal. Sept. 14, 2007).
[35] *Id.*

62031

to invoke the 'Related Claims' provision."[36] The same is true here.

BCBSLA suggests that Illinois Union relies on out-of-circuit case law because the relevant case law in the Fifth is not as friendly to its cause. But the Fifth Circuit cases that BCBSLA cites to demonstrate this point are not especially persuasive. For example, in *Deposit Ins. Corp. v. Mmahat,*[37] the Fifth Circuit did, indeed, conclude that a series of related acts undertaken by an attorney were not sufficiently related for insurance purposes. However, the facts of *Mmahat* do not jibe with the facts here. The *Mmahat* court found that the attorney had engaged in "three discrete acts of malpractice,"[38] with a common goal: to "generate fees for his firm."[39] Although BCBSLA is alleged in both the Omega and CCSC suits to have developed a practice of underpaying practitioners, thus saving them money, the suits allege a *common scheme* – even an identical scheme – toward that goal, not various discrete acts. Most distinguishing is the fact that the Court in *Mmahat* did not have the benefit of a contractual definition of "related claims." Without a contractual definition of the terms "related claims," the court applied a "logically or causally connected" standard. "Logically or causally connected" is a more demanding standard than the definition contractually agreed upon by the parties in this case, which requires decidedly less connectedness, namely, that the claims have "as a common nexus any fact, circumstance, situation, event, transaction, cause or series of related facts."

Similarly, BCBSLA cites *Argent Fin. Grp., inc. v. Fid. & Deposit Co. of Maryland,*[40]

---

[36] *Id.*
[37] 907 F.2d 546 (5th Cir. 1990).
[38] *Id.* at 554.
[39] *Id.* at 553.
[40] No. CIV.A.04-2323, 2005 WL 2304515, at *2 (W.D. La. Sept. 21, 2005).
62031

which relied on *Mmahat* and borrowed its "logically or causally connected" definition for relatedness. The *Argent* court (the Western District of Louisiana) reads *Mmahat* to stand for the proposition that "a common scheme to defraud or harm is irrelevant"[41] when assessing relatedness. While the Fifth Circuit in *Mmahat* did state that "a single motive does not make a single act,"[42] this Court does not read that statement as compelling the conclusion that a common scheme is *irrelevant* to the relatedness analysis, particularly, where, as here, the policy language expressly defines "related claims" as claims having "as a common nexus any . . . cause. . .". This Court reads *Mmahat* as reasoning that a single motive, in and of itself, is not sufficient to establish relatedness. Here, the Omega and CCSC lawsuits allege more than merely a common motive; they allege that BCBSLA took the *same* actions (threatening doctors and forcing providers to rely upon misleading coverage information from iLinkBlue) against two *very similar* defendants (both hospitals in Metairie, Louisiana), and that those similar actions were motivated by a common goal. The Eleventh Circuit put it well in *Health First* when it said that "half-hearted attempts to distinguish the underlying lawsuits based on the identity of the plaintiffs or time at which they were filed do not change the fact that all the lawsuits describe a continuing pattern of the same or similar bad behavior."[43]

BCBSLA argues that the "Related Claims" provision in the contract between the parties is an "exclusion" or a "condition" that, under Louisiana law, should be construed against the insurer and interpreted narrowly.[44] But BCBSLA does not convincingly identify

---

[41] *Id.* at *8.
[42] *Fed. Deposit Ins. Corp. v. Mmahat*, 907 F.2d 546, 554 (5th Cir. 1990).
[43] *Health First, Inc. v. Capitol Specialty Ins. Corp.,* 747 F. App'x 744, 751 (11th Cir. 2018).
[44] Rec. Doc. No. 43, p. 5.
62031

much, if any, ambiguity to be construed. Even a narrow interpretation of the exceedingly broad "Related Claims" definition clearly points to the Omega and CCSC lawsuits being related. Although BCBSLA dismisses the similarities between the suits as mere "word processing shortcuts"[45] by the attorney drafting both complaints, the Court is capable of setting aside similarities in prose and assessing the underlying substance of the two claims, which, based on the allegations in the complaints and the insurance contract between the parties, are "Related Claims" because they clearly "have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of related facts."[46]

### III.   CONCLUSION

For the reasons stated above, Illinois Union's *Motion for Judgment on the Pleadings*[47] is hereby granted. BCBSLA's claims are hereby dismissed with prejudice.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>December 14, 2020</u>.

*[signature: Shelly D. Dick]*

**CHIEF JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[45] *Id.* at p. 8.
[46] Rec. Doc. No. 27-2, p. 11.
[47] Rec. Doc. No. 39.
62031